<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Defense Logistics Agency (DLA) (collectively the "United States"), 3M Company ("3M" or "Defendant"), and Moldex-Metric, Inc. ("Moldex" or "Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.      3M Company is a for-profit corporation headquartered in St. Paul, Minnesota, that manufactures and sells worker safety products.  As relevant here, 3M manufactured and caused to be sold to the United States a hearing protection device known as the Combat Arms Earplug (Version 2) (the "CAEv2").  The CAEv2 was first developed and sold by Aearo Technologies, Inc. ("Aearo"), a company which 3M acquired in 2008.

B.      On May 12, 2016, Moldex filed a *qui tam* action in the United States District Court for the District of South Carolina captioned *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, 3:16-cv-01533-MBS, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").  Relator alleges that the CAEv2 had a design defect which could cause the earplug to imperceptibly loosen in users' ears, thereby rendering the earplugs useless or less effective; that the testing methodology employed by 3M did not comply with required and/or accepted standards; and, that the Noise Reduction Rating (NRR) listed on the CAEv2 packaging materials and instructions did not accurately reflect the true characteristics of the CAEv2.  Relator further alleges that 3M and/or its affiliated companies knowingly sold the CAEv2 to the

United States military without first disclosing the design defect, flawed testing, and inaccurate NRR rating, which resulted in the submission of false claims.

C.      The United States contends that it has certain civil claims against 3M arising from the submission or causing the submission of claims for reimbursement for sales of the CAEv2 to the United States military from January 2006 through December 2015.  Prior to delivering the CAEv2 to the United States, the United States alleges that 3M, and its predecessor Aearo, knew that the CAEv2 was too short for proper insertion in users' ears and, therefore, did not perform as well in certain individuals.  Additionally, the United States alleges that 3M did not disclose this information to the United States and delivered the CAEv2 to the United States knowing that the product contained defects that impaired the CAEv2's serviceability.  That conduct is referred to below as the Covered Conduct.

D.      3M expressly denies the allegations in the Covered Conduct and all of the allegations in the *qui tam* complaint.  This Settlement Agreement is neither an admission of liability by 3M, nor a concession by the United States that its claims are not well founded.

E.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    3M shall pay to the United States Nine Million One Hundred Thousand Dollars ($9,100,000.00) (Settlement Amount), of which Four Million Five Hundred Sixty Thousand Dollars ($4,560,000.00) is restitution.  The Settlement Amount shall be paid within seven days of the Effective Date of this Agreement, as the term is defined in Paragraph 23 below.  The Settlement Amount shall be paid to the United States by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice no later than the Effective Date of this Agreement.  Notwithstanding any provision of this Agreement, interest on any unpaid balance of the Settlement Amount shall accrue at a rate of twelve percent per annum, compounded daily beginning on the eighth day after the Effective Date of this Agreement, on the remaining unpaid balance.

2.    Conditioned upon the United States receiving the Settlement Amount from 3M and as soon as feasible after receipt, the United States shall pay One Million Nine Hundred and Eleven Thousand Dollars ($1,911,000) to Relator by electronic funds transfer.

3.    3M further agrees to pay the Relator the agreed upon amount of $645,000.00 for attorneys' fees, expenses and other legal costs (the "Relator's Costs").  3M agrees to pay the Relator's Costs no later than 14 days from the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by Relator no later than the Effective Date of this Agreement.

4.    Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon 3M's full payment of the Settlement Amount, the United

States releases 3M, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, or any other statutory provision creating a cause of action for civil damages or civil penalties that the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, § 0.45(d) or common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 6 below, and conditioned upon 3M's full payment of the Settlement Amount and full payment of the Relator's Costs, Relator, for itself and for its successors, attorneys, agents, and assigns, releases 3M, together with its current and former parent corporations; current and former directors, officers, agents and employees; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them (collectively the "Releasees") from all of the following claims:

(a)      Any and all claims, whether disclosed or undisclosed, which Relator has asserted, could have asserted, or may assert now or in the future against the Releasees arising out of or in any way connected with the Civil Action, the Covered Conduct, and the Relator's investigation and prosecution thereof, including but not limited to any civil monetary claim the Relator or the United States has or may have under the False Claims

4

Act, 31 U.S.C. §§ 3729-3733; any claim for attorneys' fees, expenses or costs under 31 U.S.C. § 3730(d); any other statute creating a cause of action for civil damages or penalties, or any common law theories, including but not limited to breach of contract, payment by mistake, unjust enrichment and fraud.

6.    Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.    Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any liability for failure to deliver goods or services due;

g.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.    Relator and its successors, attorneys, agents, and assigns shall not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and

its successors, attorneys, agents, and assigns fully and finally release, waive, and forever

discharge the United States, its agencies, officers, agents, employees, from any claims

arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any

claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.      3M waives and shall not assert any defenses it may have to any criminal

prosecution or administrative action relating to the Covered Conduct that may be based in

whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth

Amendment of the Constitution, this Agreement bars a remedy sought in such criminal

prosecution or administrative action.

9.      3M fully and finally releases the United States, its agencies, officers,

agents, employees, and servants, from any claims (including attorney's fees, costs, and

expenses of every kind and however denominated) that 3M has asserted, could have

asserted, or may assert in the future against the United States, its agencies, officers,

agents, employees, and servants, related to the Covered Conduct and the United States'

investigation and prosecution thereof.

10.     3M, for itself and for its successors, attorneys, agents, and assigns,

releases Relator, together with its current and former parent corporations; current and

former directors, officers, agents and employees; direct and indirect subsidiaries; brother

or sister corporations; divisions; current or former corporate owners; and the corporate

successors and assigns of any of them (collectively the "Moldex Releasees") from any

claims (including attorney's fees, costs, and expenses of every kind and however

denominated) that 3M has asserted, could have asserted, or may assert now or in the

future against the Moldex Releasees arising out of or in any way connected with the Civil Action, the Covered Conduct, and the Relator's investigation and prosecution thereof, including but not limited to any cause of action for civil damages or penalties, or any common law theories, including but not limited to breach of contract, payment by mistake, unjust enrichment and fraud.

11.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of 3M, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     3M's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment 3M makes to the United States pursuant to this Agreement and any payments that 3M may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.      Future Treatment of Unallowable Costs:  These Unallowable Costs will be separately determined and accounted for by 3M, and 3M shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.      Treatment of Unallowable Costs Previously Submitted for Payment:  Within 90 days of the Effective Date of this Agreement, 3M shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by 3M or any of its subsidiaries or affiliates from the United States.  3M agrees that the United States, at a minimum, shall be entitled to recoup from 3M any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine 3M's books and records and to disagree with any calculations submitted by 3M or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by 3M, or the effect of any such Unallowable Costs on the amount of such payments.

12.      This Agreement is intended to be for the benefit of the Parties only.

13.      Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

14.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15.      Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

8

16.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of South Carolina.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

18.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.  The Relator represents that it has discussed this Agreement with its counsel prior to signing.

19.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20.     This Agreement is binding on 3M's successors, transferees, heirs, and assigns.

21.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 7-23-18 BY: _____

                       Brandie N. Weddle
                       Trial Attorney
                       Commercial Litigation Branch
                       Civil Division
                       United States Department of Justice

DATED: _____ BY: _____

                       Stan Ragsdale
                       Brook Andrews
                       Assistant United States Attorneys
                       District of South Carolina

3M COMPANY - DEFENDANT

DATED: _____ BY: _____

                       3M COMPANY
                       Mojdeh Poul
                       Executive Vice President – Safety & Graphics Business
                       Group

DATED: _____ BY: _____

                       Courtney Enloe
                       Associate General Counsel
                       3M Legal Affairs

MOLDEX-METRIC - RELATOR

DATED: _____ BY: _____

                       MOLDEX-METRIC
                       Mark Magidson
                       President and CEO

10

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
                          Brandie N. Weddle
                          Trial Attorney
                          Commercial Litigation Branch
                          Civil Division
                          United States Department of Justice

DATED: 7-23-18 BY: _____
                          Stan Ragsdale
                          Brook Andrews
                          Assistant United States Attorneys
                          District of South Carolina

3M COMPANY - DEFENDANT

DATED: _____ BY: _____
                          3M COMPANY
                          Mojdeh Poul
                          Executive Vice President – Safety & Graphics Business
                          Group

DATED: _____ BY: _____
                          Courtney Enloe
                          Associate General Counsel
                          3M Legal Affairs

MOLDEX-METRIC - RELATOR

DATED: _____ BY: _____
                          MOLDEX-METRIC
                          Mark Magidson
                          President and CEO

10

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____

Brandie N. Weddle
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____ BY: _____

Stan Ragsdale
Brook Andrews
Assistant United States Attorneys
District of South Carolina

3M COMPANY - DEFENDANT

DATED: 7/23/18 BY: _____

3M COMPANY
Mojdeh Poul
Executive Vice President – Safety & Graphics Business Group

DATED: 7/23/18 BY: _____

Courtney Enloe
Associate General Counsel
3M Legal Affairs

MOLDEX-METRIC - RELATOR

DATED: _____ BY: _____

MOLDEX-METRIC
Mark Magidson
President and CEO

10

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____

Brandie N. Weddle
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____ BY: _____

Stan Ragsdale
Brook Andrews
Assistant United States Attorneys
District of South Carolina

3M COMPANY - DEFENDANT

DATED: _____ BY: _____

3M COMPANY
Mojdeh Poul
Executive Vice President – Safety & Graphics Business
Group

DATED: _____ BY: _____

Courtney Enloe
Associate General Counsel
3M Legal Affairs

MOLDEX-METRIC - RELATOR

DATED: 7-20-18 BY: _____

MOLDEX-METRIC
Mark Magidson
President and CEO

10

DATED: 7/20/2018 BY: _____

Counsel for MOLDEX-METRIC
Sam S. Sheldon
Quinn Emanuel Urquhart & Sullivan LLP
777 6th Street, NW
Washington DC 20001